FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

97 MAR 31 PM 2:22

U.S. DISTRICT COURT
N.D. OF ALABAMA

KRISTI BARRETT,                    )
                                   )
        Plaintiff,                 )      CIVIL ACTION NO.
                                   )
v.                                 )      95-AR-1226-S
                                   )
GADSDEN STATE COMMUNITY            )
COLLEGE,                           )
                                   )                    ENTERED
        Defendant.                 )
                                   )              MAR 31 1997
_____    )
                                   )
STACEY DAVIES,                     )
                                   )
        Plaintiff,                 )
                                   )
                                   )      CIVIL ACTION NO.
v.                                 )
                                   )      96-AR-1079-S
GADSDEN STATE COMMUNITY            )
COLLEGE, et al.,                   )
                                   )
        Defendants.                )

**MEMORANDUM OPINION**

The court has before it a motion of summary judgment filed
by defendants, Gadsden State Community College ("GSCC") and Dr.
Victor Ficker ("Ficker"), in civil action number 96-AR-1079-S.
Plaintiff, Stacey Davies ("Davies") alleges that GSCC and Ficker
violated Title IX of the Education Amendments of 1972, 20 U.S.C.
§§ 1681 et seq. ("Title IX") by engaging in hostile environment
sexual harassment and quid pro quo sexual harassment; violated 42
U.S.C. § 1983 by violating the equal protection clause of the

1

14th Amendment under the color of state law; violated 42 U.S.C. §
1985(3); and committed the state law torts of invasion of
privacy, outrage and assault and battery. Because Davies has
elected to voluntarily dismiss her 42 U.S.C. § 1985(3) claims and
her state tort law claims for invasion of privacy, outrage and
assault and battery in the pre-trial order, those claims are due
to be dismissed. (See this court's order on Pre-trial Hearing,
February 28, 1997, at 3). Because genuine issues of material
fact exist with regard to some of Davies' claims, defendants'
motion will be granted in part and denied in part.

## I. Undisputed Facts

Davies is a female, born May 15, 1971. She attended GSCC
from 1989 until 1995. Davies earned an associates degree in
business in 1993. Thereafter, she commenced work in the
radiology department, and earned an associates degree in
radiology in 1995. She graduated with a 3.8 grade point average
on a 4.0 scale and obtained employment utilizing her radiology
degree.

William Balke ("Balke") was the director of the radiology
department and one of its two instructors when Davies commenced
her studies in the summer of 1993. Balke was employed by GSCC
from 1989 until he was suspended July 1994, and terminated soon
thereafter. Balke was terminated based upon complaints of sexual

2

harassment filed against him.

Prior to entering the Radiology program, Davies was warned that Balke was a touchy person and possibly a pervert. Furthermore, just before Davies was admitted into the program she witnessed Balke grabbing lint off another student's sweater in the chest area.  Neither Davies nor the other student reported the incident.

Davies feels that Balke was a poor professor.  In fact, she characterizes his teaching methods as unfair.  Balke told the students what to study for tests; but often, tested them on substantially different material.  As a result, the majority, although not all, of the class failed the examinations.  Balke invited students to attend study sessions at his house; however, Davies never attended and she does not believe that she was retaliated against for not attending.  In addition, Balke asked students to come to his office to review their tests.  Some students went to Balke's office without request in order to find out their grades or discuss a test.  Thereafter, Balke would give the test over again or eliminate certain questions and regrade the test.

Balke hugged and kissed Davies on more than one occasion. In the fall of 1993, while Davies was in Balke's office, Balke kissed Davies on the hand and told her how good she looked.  In

3

March 1994, Balke kissed and hugged Davies in front of the entire class.  Balke kissed Davies on one subsequent occasion in either April or May 1994.  In addition, Davies witnessed Balke kissing other female students in class.

In 1994, Davies and other students complained to a visiting accreditation committee about Balke's actions toward female students.  Subsequently, Balke came to class and passed out the GSCC sexual harassment policy.  He then told the students that they should come to him or to Linda Davis ("Davis"), academic supervisor and Balke's supervisor, if they had any complaints.

The accreditation committee informed Davis of the students' sexual harassment complaints about Balke.  In addition, the accreditation committee told Dean Nichols, Davis' supervisor, and Dean Osborn, dean of academic and student services, of the allegations.  Thereafter, Dean Osborn told Victor Ficker, the president, what the committee told him.  There was no disciplinary action taken against Balke as a result of these allegations.  In fact, Balke subsequently told a sexual harassment committee that Davis never informed him of these complaints.

These complaints were not the first against Balke.  In 1992, Barbara Franklin ("Franklin") complained that Balke had sexually harassed her.  Her complaints included allegations that Balke

4

touched her breast and pulled string off her shirt around her breast.  Cherlyn Stowe ("Stowe"), GSCC's Title IX coordinator, determined that there were grounds for a sexual harassment charge and recommended that Balke be reprimanded.  Ficker then sent a memo to Balke stating that it was a formal reprimand.  Ficker placed it in a confidential file so that a visiting accreditation committee would not see it.  Davis was not advised of the complaint, even though she would need to know about complaints of sexual harassment in order to perform the yearly evaluation.

In June 1994, Kristi Barrett ("Barrett"), a student a GSCC, filed a written complaint of sexual harassment against Balke. Contemporaneously, Barrett inquired as to whether other complaints had ever been filed against Balke.  Stowe informed her that no other complaints had been filed.  Ostensibly, Stowe overlooked or forgot about Franklin's previous complaint.  Stowe did not talk with Balke as a result of this complaint.

Subsequently, on or about July 26, 1994, Davies and four other students met with Davis to make sexual harassment complaints against Balke.  Davis was very negative about the students making reports.  This was the first time Davies complained to GSCC about Balke.  During this meeting, Davis learned that Balke had been arrested for sexual abuse of Barrett. On or about January 13, 1995, Balke pled guilty to misdemeanor

5

sexual abuse.  On or about July 28, 1994, Davies filed a written

complaint about Balke's sexual harassment.

As a result of another complaint by Barrett on July 25,

1994, the GSCC was conducting a full investigation and ultimately

held a hearing dealing with Balke.  Balke was suspended on July

27, 1994, pending the outcome of the investigation.  As a result

of the investigation and hearing, Balke was terminated.

Stowe did not train the faculty with respect to sexual

harassment until after Balke was terminated.  Stowe, herself, did

not have any sexual harassment training prior to her appointment

as Title IX coordinator.

## II. Analysis

### A. Rule 56

Rule 56 states, in pertinent part:

> The judgment sought shall be rendered forthwith if the
> pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any,
> show that there is no genuine issue as to any material fact
> and that the moving party is entitled to a judgment as a
> matter of law.

F. R. Civ. P. 56(c).  The obvious was stated by the Eleventh

Circuit as follows: "[s]ummary judgment is appropriate where

there exists no genuine issue of material fact and the movant is

entitled to judgment as a matter of law."  Turnes v. AmSouth

Bank, N.A., 36 F.3d 1057, 1061 (11th Cir. 1994).   Defendants

have invoked Rule 56.

## B. *Statute of Limitations*

Defendants argue that Davies' Title IX and 42 U.S.C. § 1983 claims are barred by the applicable statute of limitations. Assuming defendants are correct in asserting that two years is the appropriate statute of limitations with respect to Davies' claims, this court must determine if Davies filed this action more than two years after the last incident giving rise to her claims.

Rule 8(c), Fed. R.Civ. P., characterizes the statute of limitations as an affirmative defense. Consequently, defendants have the burden of proof. *See Harrison v. Thompson*, 447 F.2d 459, 460 (5th Cir. 1971). If there is a question of fact regarding the expiration of the statute of limitations it shall be left to the finder of fact. *Id.*

Davies filed this action on April 25, 1996. Davies argues that Balke kissed and hugged her in March 1994, and that he kissed her again in either April or May 1994. Thereafter, Balke was suspended in July 1994.

While Davies has not demonstrated whether the last incident definitively occurred within the two-year statute, the burden is on defendants. Defendants have failed to meet this burden, by

7

failing to eliminate the question of fact regarding if the subsequent act took place within the two year statute.  Thus, this question is to be left within the province of the jury.

Furthermore, because this court discerns that a reasonable juror could conclude that Balke's actions created a hostile education environment, whether the hostility ceased the last time Balke kissed Davies is not for the court to determine.  "When the alleged hostile environment ceased to exist" is "for the jury to decide."  *Quillen v. American Tobacco Co.*, 874 F. Supp. 1285, 1292 (M.D. Ala. 1995)(quoting *Saville v. Houston County Healthcare Auth.*, 852 F. Supp. 1512, 1526-27 (M.D. Ala. 1994)).  Accordingly, defendants' motion for summary judgment based on the statute of limitations is due to be denied.

### C. Title IX

The anti-discrimination provisions of Title IX[1] are "enforceable through an implied right of action."  *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 65, 112 S. Ct. 1028 (1992).  Davies claims that Balke engaged in both quid pro quo and hostile environment sexual harassment while she was enrolled

---

[1] Title IX provides in pertinent part that "[n]o person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  GSCC does not contest that it is an educational institution benefitting from "Federal financial assistance," thus making it subject to the anti-discrimination provisions of Title IX.

8

as a student at GSCC.  This court turns now to address Davies'
Title IX claims for quid pro quo and hostile environment sexual
harassment against Ficker and GSCC, respectively.

1. Title IX - Individual Liability

Defendants argue that the Title IX claim against Ficker is
due to be dismissed because individuals cannot be sued under
Title IX.  This court agrees.  "Title IX actions may only be
brought against an educational institution or entity, not an
individual acting as an administrator or employee of the
institution or entity."  *Does v. Covington County School Bd. of
Educ.*, 930 F. Supp. 554, 566 (M.D. Ala. 1996); *accord Doe v.
Hillsboro Indep. School Dist.*, 81 F.3d 1395, 1400 n.9 (5th Cir.
1996).

Davies has not cited one case where any court held that
individuals are liable under Title IX.  Likewise, this court has
not located any cases finding individuals liable.  Instead, all
courts that have addressed the issue have held that only
institutions may be liable under Title IX, not individuals.  *See,
e.g., Lipsett v. University of Puerto Rico,* 864 F.2d 881, 901
(1st Cir. 1988).  Furthermore, because Title IX "prohibits
discrimination against beneficiaries in programs and activities
that receive federal financial assistance, it is the educational
institution that must be sued for violations of Title IX."

9

*Covington School Bd.*, 930 F. Supp. at 566 (citations omitted).
Accordingly, because individuals are not liable under Title IX,
defendants' motion for summary judgment as to Davies' Title IX
claims against Ficker is due to be granted.

2. <u>Title IX - Educational Institution</u>

This court now turns to address Davies' claims against GSCC
wherein she alleges that Balke engaged in quid pro quo and
hostile educational environment sexual harassment.  It is
undisputed that an educational institution can be liable when a
teacher engages in sexual harassment of his/her students.  *See*
*Covington School Bd.*, 930 F. Supp. at 566.  This court will
address the quid pro quo and the hostile educational environment
sexual harassment claims in turn.

In a quid pro quo sexual harassment case the educational
institute is strictly liable for a teacher's harassment of
students.  *See Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d
1311, 1315 (11th Cir. 1989).[2]  To establish a <u>prima facie</u>
elements for quid pro quo sexual harassment, Davies must prove:

_____

[2] Although *Steele* and other cases cited *infra* deal with, Title VII sexual
harassment actions, this court will look to Title VII law for guidance when
hearing similar Title IX discrimination suits.  Several references will be made
in the following text to such Title VII cases.  Where appropriate, references to
employer/employee, the proper parties to Title VII actions, will be replaced in
quoted language with student/instructor in order to place the relevant language
in the Title IX education context.

10

(1) the student belongs to a protected group;[3] (2) the student was subject to unwelcome sexual harassment; (3) the harassment complained of was based on sex; and (4) the student's reaction to the unwelcome behavior affected tangible aspects of the student's educational status. *See Virgo v. Riviera Beach Associates, Ltd.*, 30 F.3d 1350, 1361 (11th Cir. 1994). GSCC contends that Davies has failed to prove that Balke's behavior affected a tangible aspect of her educational experience. In order for Davies to demonstrate a tangible detriment to her education, she must be able to prove that she "was deprived of an [educational] benefit which she was otherwise qualified to receive because of the [instructor's] use of prohibited criterion in making the [instructional/educational] decision." *Henson v. City of Dundee*, 682 F.2d 897, 909 (11th Cir.1982). In other words, "quid pro quo sexual harassment occurs when an [instructor] alter's a [student's learning] conditions as a result of the [student's] refusal to submit to sexual demands." *Steele*, 867 F.2d at 1315.

Davies asserts that Balke engaged in quid pro quo sexual harassment against her in two different ways. First, Davies alleges that Balke created an intricate scheme to "lure" female

---

[3]This prong of the *prima facie* case for quid pro quo sexual harassment appears to no longer exist. Davies asserts that she must demonstrate that she belonged to the protected class, that is, she was either a male or a female. Because ostensibly everyone falls into one category or the other, save a hermaphrodite, this broad protected class definition has obviated the need for the first prong of the prima *facie case*.

students into his office in order to pass the class.  Second, Davies argues that by telling the students to report complaints, concerning him, to himself or his supervisor, Davis, he was threatening their good standing in the program.

First, Davies alleges that Balke administered unfair tests to his class which resulted in all the students failing the test. Thereafter, the students would go to see Balke in his office to ask for a regrade or for him to administer a new test.  Usually, Balke would then either give the class the test again or eliminate certain questions and regrade the test.  Davies argues that these unfair tests were given in an attempt to "lure" female students into his office so that he could sexually harass them. Effectively, Davies asserts that Balke engaged in implicit quid pro quo sexual harassment.

A review of the record reveals that Balke did not condition Davies' grades upon a demand for sexual favors.  First, not every student failed the test as it was administered.  In addition, the record does not reveal that Balke ever asked or requested that Davies come to his office to discuss her grades.  Moreover, Davies has stated that she skipped the study sessions at his house and her grades were not adversely affected.  In fact, Davies states that Balke did not alter her grades, by giving her a higher or lower grade than she deserved.  Quid pro quo sexual

harassment does not and cannot exist on mere speculation, conjecture or surmise.

Second, Davies argues that Balke committed quid pro quo sexual harassment by telling the students to only complain to him or Davis with respect to any complaints of sexual harassment they had of him.  The evidence with regard to this argument does not reflect any quid pro quo sexual harassment.  There is no "this for that."  Davies does not argue that Balke based his reporting system on any demand for sexual favors.  Davies argues if she did not follow the reporting system she might have been subject to losing her good standing in the program.  Put simply, Barrett has presented no evidence that would allow a jury to infer that Balke conditioned either her continued participation in the radiology program or her level of success in that program on her willingness to satisfy his libido.  As a result, Davies has failed to make her prima facie case for Title IX quid pro quo sexual harassment, and defendants' motion for summary judgment will be granted as to that claim.

The hostile environment sexual harassment plaintiff

must prove the following in order to establish a prima facie case: (1) that the [student] belongs to a protected group; (2) that the [student] was subject to "unwelcome" sexual harassment; (3) that the harassment complained of was based on sex; and (4) that the harassment complained of affected a "term, condition, or privilege" of [her education] in that it was

13

"sufficiently severe or pervasive 'to alter the
conditions of [the student's enrollment] and create an
abusive [educational] environment.'

*Sparks v. Pilot Freight Carriers, Inc.*, 830 F.2d 1554, 1557

(1987)(citations omitted). In addition to these four elements,

Davies must also be able to show indirect liability on the part

of GSCC because it either knew or should have known of Balke's

harassing proclivities and failed to take prompt remedial action,

*Steele*, 867 F.2d at 1316.

Davies alleges, citing *Vance v. Southern Bell Tel. & Tel*

*Co.*, 863 F.2d 1503, 1514-15 (11th Cir. 1989), *abrogated by,*

*Harris v. Forklift Systems*, 510 U.S. 17, 114 S. Ct. 367 (1993),

that in certain circumstances employers may be directly liable

for hostile educational environment claims. The Eleventh Circuit

in *Faragher v. City of Boca Raton*, 76 F.3d 1155 (11th Cir. 1996),

*vacated by* 83 F.3d 1346 (11th Cir. 1996)(submitted for en banc

rehearing),[4] noted the intra-circuit conflict between *Steele,* 867

F.2d 1311, that precludes strict liability in a hostile

environment case, and *Patterson, v. McLean Credit Union*, 491 U.S.

164, 109 S. Ct. 2363 (1989), that would allow direct liability if

the harasser acted as the educational institute's agent.

Assuming that direct liability can attach when a teacher acts as

---

[4]Defendant incorrectly cites *Faragher* as good law. (Davies' Reply Brief
at 7). Such is not the case. This court reminds all counsel to verify the
subsequent history of any statute or case cited to each and every tribunal.

an agent of the school, this court is persuaded by the reasoning

of *Brewer v. Petroleum Suppliers,* 946 F. Supp. 926 (N.D. Ala.

1996), which examined the *Faragher* reasoning, before that

decision was vacated. *Brewer,* 946 F. Supp. at 933-34.

> Whether a harasser acts as an [school's] agent involves
> common law principles, but the common law is not to be
> drawn from the law of the state in which the harassment
> occurs.  The Eleventh Circuit Court of Appeals has
> stated that central to the inquiry of whether a
> harasser acts as an [school's] agent is whether the
> harasser is acting within the scope of employment while
> harassing the [student]. In *Faragher,* the Court of
> Appeals listed several factors to direct this inquiry,
> such as "the [teacher's] direct authority over the
> plaintiff, the overall structure of the [school], and
> the relative positions of the parties."  However, these
> factors are not determinative of whether the actions
> took place within the scope of employment.  An act of
> harassment by a [teacher] who has substantial authority
> over a [student] in a [school] with little official
> policy on harassment will still fail to be within the
> scope of employment if the harassment does not occur as
> part of the [school's] policy for encouraging or
> discouraging [student] behavior, for increasing
> productivity, or for accomplishing other of the
> [school's] goals.

*Id.* (emphasis added). There is no evidence that the alleged

conduct of Balke was part of any scheme, good or bad, relating to

education.  Balke therefore was not acting as an agent for

defendant when he allegedly harassed Davies. *See id.*  Balke's

alleged actions were purely personal. Accordingly, GSCC cannot be

directly liable for Davies' sexual harassment claim.  Instead,

Davies must show that GSCC knew or should have known about the

15

alleged harassment and that GSCC failed to take adequate remedial measures in remedying the situation.

GSCC does not attempt to argue that Balke's actions do not constitute sexual harassment.  Even if it did, this court would find that Davies demonstrated both objectively and subjectively that a hostile educational environment existed.  Rather, GSCC argues that it did not know about the harassment of Davies, and that when it did find out, prompt remedial action was taken.

It is clear that a school "is absolved from liability if it takes prompt and *appropriate* remedial action in response to the harassment."  *Sparks v. Regional Medical Ctr. Bd.*, 792 F. Supp. 735, 744 (N.D. Ala. 1992).  "Of special importance is whether the sexual harassment ended after the remedial action was taken."  *Sanchez v. City of Miami Beach*, 720 F. Supp. 974, 980 (S.D. Fla. 1989).

GSCC argues that it did not know about any alleged harassment of Davies until she filed her formal complaint on July 28, 1994, and by that time, it had already suspended Balke on July 27, 1994, pending investigation of complaint by Barrett. This action, of suspending and ultimately terminating Balke, effectively eliminated the harassment.  The evidence, however, indicates that GSCC had, at the very least, constructive knowledge before Davies filed her formal complaint.

16

Davies and five or six other students informed an
accreditation committee about the acts of Balke well before July
1994.  A member of the accreditation committee told Davis, Dean
Nichols and Dean Osborn about the complaints and suggested that
GSCC might want to investigate Balke.  Thereafter, Dean Osborn
told Ficker about the complaint.  There is no evidence that GSCC
did anything with this information.  In fact, Balke was not
reprimanded and he states that Davis, his supervisor, did not
tell him about the complaints.

Furthermore, this court finds the well-reasoned analysis of
*Munn v. Mayor and Alderman of Savannah*, 906 F. Supp. 1577, 1583
(S.D. Ga. 1995), particularly persuasive.   In *Munn*, the court
held that remedial action includes eliminating the harassment not
just with regard to the complainant, but also with regard to
other potential victims.  In this case, it is undisputed that
GSCC was aware of complaints of sexual harassment lodged against
Balke as far back as 1992.  In fact, GSCC placed a reprimand in a
confidential file on Balke in 1992.  Obviously, however, the
harassment continued and GSCC had at least constructive knowledge
of the subsequent allegations.  Accordingly, this court finds
that Davies has presented sufficient evidence to create a
question of fact as to whether GSCC can be indirectly liable
under Title IX for the hostile sexual environment created by

17

Balke.  Defendants' Rule 56 motion will be denied as to Barrett's

hostile environment Title IX claim as against GSCC.

### D. 42 U.S.C. § 1983

Davies also alleges that GSCC and Ficker's failure to

investigate claims of sexual harassment against Balke deprived

her of equal protection of the laws guaranteed by the Fourteenth

Amendment.  Because the Fourteenth Amendment provides no private

cause of action, plaintiff has properly invoked § 1983, which

provides:

> [e]very person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> ... subjects, or causes to be subjected, any citizen of
> the United States ... to the deprivation of any rights,
> privileges, or immunities secured by the Constitution
> and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper
> proceeding for redress. ...

42 U.S.C. § 1983.

This court has already answered the question surrounding

GSCC's liability pursuant to 42 U.S.C. § 1983.  "Because GSCC is

the State of Alabama for the purposes of [Davies'] § 1983 claim,

it enjoys absolute immunity under the 11th Amendment to that

portion of her action.  As a result, defendants' motion will be

granted as to [Davies'] claim for relief under § 1983, and that

part of her action will be dismissed with prejudice."  (See the

court's order of July 8, 1996, in Barrett v. Gadsden State

Community College, CV-AR-1226-S, previously consolidated with

this action).

From the face of the complaint, it is unclear whether Davies
has sued Ficker in his official capacity, his individual capacity
or both.   To the extent plaintiff has sued Ficker in his capacity
as an official representative of GSCC, the court has established
that GSCC and the State of Alabama are one and the same for the
purposes of this consolidated action,[5] and, therefore, a suit
against official Ficker is a suit against the State.

Ficker has appropriately invoked the cloak of Eleventh
Amendment immunity as a shield to Davies' § 1983 official
capacity claim.   Through the application of the Eleventh
Amendment, the State, which includes Ficker in his official
capacity, is not a "person" as that term is used in § 1983.   *See*
*Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.
Ct. 2304 (1989) ("neither a State nor its officials acting in
their official capacities are 'persons' under § 1983").   Because
Ficker, as a State official, is not amenable to suit under §
1983, his motion will be granted as to Davies' § 1983 claim
inasmuch as Davies has sued his in his official capacity.

Davies correctly points out that this Eleventh Amendment
immunity does not extend to protect Ficker in his individual

---

[5] See the court's order of July 8, 1996, in *Barrett v. Gadsden State
Community College*, CV-AR-1226-S, previously consolidated with this action.

19

capacity.  As a result, the question is whether Ficker is

entitled to qualified immunity from Davies' § 1983 claim.

Qualified immunity protects individual Ficker from § 1983

liability unless his conduct violated a "clearly established

federal statutory or constitutional right of which a reasonable

person would have known."  *Kelly v. Curtis*, 21 F.3d 1544, 1550

(11th Cir. 1994) (citations omitted).  Davies, who has the burden

of refuting a properly invoked claim of qualified immunity, must

point to a controlling case, decided before the events she now

complains of, that establishes a clear constitutional or

statutory violation in a materially similar factual setting.

*Lassiter v. Alabama A&M Univ.*, 28 F.3d 1146, 1150 (11th Cir.

1994)(en banc).

     The court agrees with plaintiff that the law of this land is

well settled that sexual harassment violates one's right to equal

protection.  This would certainly apply to Balke, the alleged

harasser.  However, the court cannot agree with plaintiff's

argument that Ficker's failure to investigate a claim of sexual

harassment by a subordinate in a college setting is part of the

clearly established law in this circuit that persons may not

interfere with a student's right to an educational environment

free from sexual discrimination harassment.  Perhaps the court

could be so convinced had Davies presented it with any Title IX

case law suggesting that this argument might be plausible. She has not.

Because Davies has failed to demonstrate that the allegations directed at Ficker indicate that Ficker may have violated any of Davies' "clearly established federal statutory or constitutional right of which a reasonable person would have known," Ficker is entitled to qualified immunity from plaintiff's § 1983 claim. As a result, Ficker's motion to dismiss will be granted insofar as Davies makes a § 1983/equal protection claim against Ficker.[6]

### III. Conclusion

Because no genuine issues of material fact exist with respect to Davies' claims against Ficker, Ficker is entitled to a judgment as a matter of law, and defendants' motion for summary judgment is due to be granted as to Ficker. Likewise, because no genuine issues of material fact exist with regard to Davies' Title IX claim of quid pro quo sexual harassment as against GSCC and her 42 U.S.C. § 1983 claim against GSCC, GSCC is entitled to a judgment as a matter of law, and defendants' motion for summary judgment as to those claims is due to be granted. However, because genuine issues of material fact exist with respect to

---

[6]*See* the court's order of July 26, 1996, granting defendant, Linda Davis' motion to dismiss.

21

Davies' Title IX hostile educational environment sexual harassment claim as against GSCC, defendants' Rule 56 motion as to that claim is due to be denied.  A separate and appropriate order will be so entered.

DONE this __31st__ day of March, 1997.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT COURT

22